IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN BAKKO, individually and on behalf                    Hon.
of himself and all others similarly situated,               Case No.

     Plaintiff,

v.

EQUIFAX, INC.,

     Defendant.

_____/

| |
|---|
| **CLASS ACTION COMPLAINT** |
| **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff Justin Bakko, individually and on behalf of himself and all others similarly situated, by his attorneys, The Miller Law Firm, P.C., based upon personal knowledge as to the facts pertaining to himself and upon information and belief as to all other matters, and based on the investigation of counsel and publicly available information, brings this class action against Equifax, Inc. for damages, injunctive relief, and other relief pursuant to consumer protection laws and allege as follows:

## NATURE OF THE ACTION

1. Defendant Equifax, Inc. is one of the three largest consumer credit reporting agencies in the nation. It collects massive amounts of the most sensitive and personal and financial information as to hundreds of millions of Americans,

including but not limited to individuals' social security numbers, credit card account numbers, banking institution information, driver's license numbers, credit history, credit limits, and the names, addresses, and telephone numbers associated with the individuals.

2.     Equifax holds the collected information in electronic format.

3.     Congress has recognized that consumer reporting agencies such as Equifax have "grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. §1681(a)(4).

4.     Although Equifax may not obtain this sensitive personal and financial information directly from consumers, consumers rely on Equifax itself to protect their personal information.

5.     Despite these stringent duties imposed upon Equifax, Equifax utterly failed to protect the personal and financial data of its consumers from hackers.

6.     On September 7, 2017, Equifax first publicly disclosed that its electronic system had been breached.  Equifax admitted that an undisclosed number of unauthorized accesses of the personal and financial information occurred, affecting approximately 143 million U.S. consumers.

7.     Equifax admits that these breaches occurred in the period mid-May through July 2017 and claims that it discovered the unauthorized accesses on July 29, 2017.[1]

8.     Although it purportedly discovered the unauthorized accesses on July 29th, Equifax inexplicably failed to inform Plaintiff, the Class, or the public until more than a month later on September 7, 2017.

9.     Press reports indicate that Equifax is currently under investigation by the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, and agencies in 40 states as a result of its acts and omissions in allowing unidentified third party or parties to access Plaintiff and the Class members' social security numbers and other private data.[2]

10.    The media has further reported that Equifax was using software that was known to have a susceptibility to unauthorized access, that a patch was available in March 2017, but Equifax failed to install the patch[3] to protect against the inevitable and catastrophic breach.

## PARTIES, JURISDICTION, AND VENUE

---

[1] *See Exhibit 1*, Equifax announcement, found at
<https://www.equifaxsecurity2017.com/> downloaded September 11, 2017.
[2] *See Exhibit 2*, "FTC probes Equifax, to Democrat likens it to Enron", Reuters, September 14, 2017, available at <https://www.reuters.com/article/us-equifax-cyber-ftc/ftc-probes-equifax-top-democrat-likens-it-to-enron-idUSKCN1BP1VX> downloaded on September 15, 2017.
[3] *Id.*

11.    Plaintiff Justin Bakko ("Plaintiff") is an individual residing in Pontiac, Michigan.

12.    Plaintiff's personally identifying information, such as his name, social security number, birthdate, address, telephone number, driver license information credit card accounts and other personal, private, and financial information has been collected and stored by Equifax and impacted by the breach.

13.    Defendant Equifax, Inc. ("Equifax") is a Georgia corporation with its principal place of business located in Atlanta, Georgia.

14.    Equifax has waived any demand or purported requirement to arbitrate.[4]

15.    Equifax has waived any purported class action waiver.

16.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).   The matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000, and there are more than 100 putative members of the Class.   Further, Plaintiff and Defendant are citizens of a different state.

---

[4] *See Exhibit 1*, Defendant's website for the security lapse in which Defendant represents:  "In response to consumer inquiries, we have made it clear that the arbitration clause and class action waiver included in the Equifax and TrustedID Premier terms of use does not apply to this cybersecurity incident."  Statement available  at  <https://www.equifaxsecurity2017.com>  at  September  8,  2017 progress update, downloaded September 11, 2017.

17.     Further, federal question jurisdiction is proper as Plaintiff asserts claims under federal statutes, including the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.  Jurisdiction is further proper as Plaintiff's state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

18.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) as Defendant transacts business in this district, Plaintiff is located in this district, and a substantial part of the events and omissions giving rise to the claims and harm from Defendant's acts have affected Plaintiff and numerous Class members in this district.

## **GENERAL ALLEGATIONS**

19.     Defendant Equifax, Inc. is one of the three largest consumer credit reporting agencies in the nation.  Equifax acquires and stores the personally identifiable information ("PII") of hundreds of millions of Americans as part of its routine business.  This information includes, but is not limited to, social security numbers, credit card account numbers, banking institution information, driver's license numbers, credit history, credit payment history, credit limits, credit dispute information, and the names, addresses, and telephone numbers associated with the individuals.

20.     Equifax holds the collected information in an electronic format.

21. Equifax had, and continues to have, a legal duty to keep the PII entrusted to its care secure and to take reasonable care in implementing measures to prevent unauthorized disclosures or access

22. PII is a valuable commodity to persons wishing to commit identity theft, a crime in which an unauthorized individual obtains another's PII and uses the information to commit fraud.

23. Unauthorized disclosure of PII can wreak havoc on an individual's life and peace of mind. Thieves that gain access to an individual's PII can exploit existing accounts, open new credit, bank, and other accounts in that individual's name, obtain phony documents, and expose the individual to less commonly anticipated dangers. For example, someone with an individual's PII could file false tax returns in that individuals name, divert social security checks, and even limit the individual's ability to obtain prescription medications.

24. The consequences of identity theft may not become apparent until long after the unauthorized disclosure has occurred, leaving Plaintiff and Class members with limited solutions and a lifetime of apprehension.

25. On September 7, 2017, Equifax publicly announced that a "cybersecurity incident," had occurred, affecting approximately 143 million of its

U.S. Consumers.  This incident took place in the period from mid-May through July of 2017.[5]

26.     According to the announcement, the accessed information included social security numbers, addresses, birth dates, and driver's license numbers. Additionally, 209,000 U.S. consumers had credit card numbers accessed.  The unauthorized intruders also obtained dispute documents containing PII for 182,000 U.S. Consumers.[6]

27.     The data breach occurred as a result of "[c]riminals exploit[ing] a U.S. website vulnerability to gain access to certain files."[7]

28.     Although Equifax claims that it purportedly discovered the unauthorized accesses on July 29 of 2017, it did not inform Plaintiff or Class members until more than a month later, on September 7, 2017.

29.     Media reports indicate that Equifax is currently under investigation by the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, and agencies in 40 states as a result of its acts and

---

[5] *See Exhibit 1,* Equifax announcement, found at
<https://www.equifaxsecurity2017.com/ > downloaded September 11, 2017.
[6] *Id.*
[7] *Id.*

omissions in allowing unidentified third party or parties to access Plaintiff and members' social security numbers and other private data.[8]

30.     The press has further reported that three of Equifax's executives sold shares in the company shortly after the breach was first discovered.   Chief Financial Officer John Gamble sold $946,374 worth of shares on August 1, 2017. Equifax's President of U.S. Information Solutions, also sold shares worth $584,099 on that date.  The following day, Rodolfo Ploder, Equifax President of Workforce Solutions, sold $250,458 worth of stock.[9]

31.     In response to the breach, Equifax established a website where consumers could check whether their PII had been exposed.

32.     Equifax also offered consumers enrollment in a free identity theft protection program.   However, the program required consumers to agree to its terms of service before they could join.  Those terms included an arbitration clause, which would bar consumers from participating in any class actions against Equifax.

---

[8] *See Exhibit* 2,"FTC probes Equifax, to Democrat likens it to Enron", Reuters, September 14, 2017, available at <https://www.reuters.com/article/us-equifax-cyber-ftc/ftc-probes-equifax-top-democrat-likens-it-to-enron-idUSKCN1BP1VX> downloaded on September 15, 2017.

[9] *See Exhibit 3*, "Three Equifax Managers Sold Stock Before Cyber Hack Revealed", Bloomberg, September 7, 2017, *updated on* September 8, 2018, available at <https://www.bloomberg.com/news/articles/2017-09-07/three-equifax-executives-sold-stock-before-revealing-cyber-hack>accessed on December 12, 2017.

33.     After suffering backlash, Equifax subsequently updated the terms of service to provide consumers an "opt out" option from the arbitration clause if they notified the company within 30 days.

34.     Equifax knew or should have known that its internal controls and data security measures were vulnerable to unauthorized intrusions.

35.     Equifax knew or should have known that the type of PII stored in its database was highly coveted by criminals, making the company a target for unauthorized hacking attempts.  Similar data breaches at other large corporations, including Yahoo and Experian, were subject to widespread media coverage.

36.     To add insult to injury, the data breach in which Plaintiff's and Class member's PII was disclosed took place two months after The Apache Foundation, the corporation responsible for managing the software hacked during the breach, had detected the coding flaw and supplied a fix.[10]

37.     Despite knowing that its security system was vulnerable and susceptible to attacks, and having a fix available to address the vulnerability, Equifax knowingly and recklessly chose to not implement that fix.

---

[10] *See Exhibit 4*, " Equifax had patch 2 months before hack and didn't install it, security group says", USA Today, September 14, 2017, available at <https://www.usatoday.com/story/money/2017/09/14/equifax-identity-theft-hackers-apache-struts/665100001/> accessed on December 11, 2017.

38.     The subsequent data breach was the direct result of Equifax's failure to exercise reasonable care in selecting, implementing, monitoring, and maintaining its internal controls and data security system.

39.     Due to Equifax's unauthorized disclosure of their PII, Plaintiff and Class members must now consider whether to pursue a number of time-consuming, costly, and potentially futile actions in the hope of protecting their credit ratings, financial stability, and peace of mind.  They must commit to a lifetime of closely monitoring their credit reports for early signs of identity theft and taking pre-emptive actions to maintain financial control.

40.     As just one example of how the data breach has affected the lives of those compromised, the FCC has warned consumers to file their taxes as soon as they have gathered all of the necessary information in order to beat scammers to the punch.[11]

## CLASS ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of himself and all others similarly situated as members of the Classes listed below:

---

[11] *See Exhibit 5*, "The Equifax Data Breach: What to Do", Federal Trade Commission Consumer Information, September 8, 2017, available at <https://www.consumer.ftc.gov/blog/2017/09/equifax-data-breach-what-do> downloaded on December 11, 2017.

    a. **The Nationwide Class**:   All persons in the United States whose personal and/or financial information was compromised and/or accessed by unauthorized individuals as a result of a data breach disclosed by Equifax on or around September of 2017.

    b. **The Michigan Subclass**:  All residents of the State of Michigan who are members of the Nationwide Class and whose personal and/or financial information was compromised and/or accessed by unauthorized individuals as a result of a data breach disclosed by Equifax on or around September of 2017.[12]

42.     Specifically excluded from the proposed Class are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, and joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, or any of them, any judge assigned to this action, and any member of their immediate family.

43.     Subject to additional information obtained through further investigation and discovery, the foregoing Class definition may be expanded or narrowed by amendment or superseded by Plaintiff's motion for class certification. Plaintiff expressly reserves the right to move for class certification of different state classes.

---

[12] The Nationwide Class and Michigan Subclass are collectively referred to as the "Class."

44.     **Numerosity of the Class.**  The members of the Class are so numerous that their individual joinder is impracticable.   Upon information and belief, Equifax's database contained sensitive personal information for millions of U.S. consumers.  Roughly 143 million consumers were potentially impacted by the data breach and there are, accordingly, millions of members in the Class.  Inasmuch as the Class members may be identified through business records regularly maintained by Equifax and its employees and agents, the number and identities of Class members can be ascertained.  Members of the Class can be notified of the pending action by e-mail and mail and supplemented by published notice, if necessary.

45.     **Existence and Predominance of Common Question of Fact and Law**.  Questions of law and fact common to the Class predominate over any questions affecting only individual Class members, including, but are not limited to:

a.   whether Equifax engaged in the conduct alleged herein;

b.   whether Equifax violated the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq.;

c.   whether Equifax violated the Michigan Consumer Protection Act;

d.   whether Equifax violated the Consumer Protection Statutes of other states;

12

e.  whether Equifax had a duty to protect PII which it acquired and stored;

f.  whether Equifax's data system security measures were consistent with recommended industry-standard security measures;

g.  whether Equifax was negligent in failing to maintain adequate internal controls and safeguards for its data system(s);

h.  whether Equifax was negligent in failing to install available updates to its security system(s);

i.  whether Equifax was negligent in failing to notify consumers of the data breach in a timely manner;

j.  whether Equifax's conduct was negligent in any other manner not specified above;

k.  whether Equifax's conduct constituted negligence *per se*;

l.  whether Equifax's failure to maintain and/or update adequate security measures enabled unauthorized individuals to gain access to PII stored in Equifax's database;

m.  whether Plaintiff and Class members suffered injury and damages as a result of Equifax's failure to maintain adequate security measures;

n.  whether Plaintiff and Class members are entitled to equitable or injunctive relief;

o.  whether Plaintiff and Class members are entitled to restitution or damages, and what is the proper measure of these damages; and

p.  whether Plaintiff and Class members are entitled to an award of punitive damages.

46.  **Typicality.**  The claims of the representative Plaintiff are typical of the claims of each member of the Class.  Plaintiff, like all other Class members, has sustained damages arising from Equifax's violations of the laws, as alleged herein.  The representative Plaintiff and Class members were and are similarly or identically harmed by the same wrongful conduct of Equifax alleged herein.

47.  **Adequacy.**  The representative Plaintiff will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate.  Counsel for the Class will vigorously assert the claims of all Class members.

48.  **Predominance and Superiority.**  This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class, and a class action is superior to other available

means for the fair and efficient adjudication of this dispute. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Equifax's conduct. Further, it would be virtually impossible for Class member to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

49.   Plaintiff contemplates the eventual issuance of a notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Equifax's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices

may be required, Plaintiff would contemplate the use of additional media and/or mailings.

50.    Additionally, this action is properly maintained as a class action pursuant to Rule 23(b)(1) and (2) of the Federal Rules of Civil Procedure, in that:

    a.  without class certification and determination of declaratory, injunctive, statutory, and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

    b.  inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

    c.  adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other Class members not parties to the adjudication or substantially impair or impede their ability to protect their interests; or

    d.  the parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final in injunctive or corresponding declaratory relief with respect to the Class as a whole.

## COUNT I – WILLFUL NONCOMPLIANCE WITH THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 *ET SEQ.*

### (On behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff)

51.     Plaintiff incorporates by reference all preceding paragraphs.

52.     Plaintiff brings this count on behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff.

53.     Equifax is a consumer reporting agency as defined by the Fair Credit Reporting Act ("FCRA") at 15 U.S.C. §1681a(f), as Equifax regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

54.     Plaintiff is a consumer as defined at 15 U.S.C. §1681a(c).

55.     The Congressional intent behind FCRA was, in part, to require that consumer reporting agencies adopt reasonable procedures that keeps consumer information confidential and available for proper utilization only.  See 15 § U.S.C. §1681(b).

56.     A consumer report is defined by FCRA as

…any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or

expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for - **(A)** credit or insurance to be used primarily for personal, family, or household purposes; **(B)** employment purposes; or **(C)** any other purpose authorized under section 1681b of this title.  (15 U.S.C. §1681a(d))

57.    Pursuant to FCRA, Equifax may only furnish a consumer report in response to expressly enumerated circumstances "and no other."  See 15 U.S.C. §1681b(a).

58.    Pursuant to FCRA, Equifax was required to maintain reasonable procedures designed to avoid violations of the act, including §1681b.  See 15 U.S.C. §1681e(a).

59.    FCRA further requires that the prospective users identify themselves and certify the purposes for which the information is sought and certify that the information will be used for no other purpose. See 15 U.S.C. §1681e(a).

60.    FCRA further requires that every consumer reporting agency

shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user with a consumer report.  No consumer reporting agency may furnish a consumer report to any person if it has reasonable ground for believing that the consumer report will not be used for a purposes listed in section 1681b of this title. See 15 U.S.C. §1681e(a).

61.    Equifax willfully violated FCRA by furnishing Plaintiff's and the Class members' consumer reports to unidentified persons through Equifax's website.

18

62.     The information improperly accessed by hackers from Equifax's website falls under the FCRA definition of consumer reports as the data included any information bearing on a consumer's credit history, credit standing, credit worthiness, credit capacity, character, reputation and income for purposes of determining credit eligibility for Class members.

63.     Equifax willfully violated FCRA by not keeping Plaintiff's and the Class members' information confidential and by not ensuring that the disclosure of such information was for proper utilization only.

64.     Rather, the information disclosed is highly likely to be used for improper uses such as identity theft, fraudulent credit usage, false credit applications, false tax return filing, and for other criminal, nefarious, and other improper activities.

65.     Equifax willfully violated FCRA by disclosing Plaintiff's and the Class members' information without obtaining the identity of the person(s) receiving the information, without obtaining certification that the uses of the information were permitted under FCRA.

66.     Equifax willfully violated FCRA by not making a reasonable effort to verify the identity of the persons accessing Plaintiff and the Class members' data and by not making a reasonable effort to verify the uses of that data.

67.    Equifax acted willfully and recklessly in disregard of its obligations under FCRA.

68.    Equifax's failures are especially egregious if reports are accurate that Equifax was aware of a known security lapse in its software and failed to install the patch to fix it.

69.    Plaintiff and the Class members have been damaged by Equifax's willful violations of FCRA and are entitled to recover any actual damages of not less than $100 and not more than $1,000 each, punitive damages, and attorneys' fees,  pursuant to 15 U.S.C. §1681n(a).

WHEREFORE, Plaintiff and the Class members respectfully request entry of a Judgment against Defendant Equifax, Inc. in whatever damages amount Plaintiff and the Class members are found to be entitled, plus punitive damages, interest, costs, and reasonable attorneys' fees.  Plaintiff further requests that this Court enter a Judgment declaring Equifax's acts as willful and knowing noncompliance with the Fair Credit Reporting Act. Plaintiff and the Class members request a Judgment for appropriate injunctive relief prohibiting further violations and proscribing behavior in order to remedy the violations and to comply with the Fair Credit Reporting Act in the future.  Plaintiff and the Class members request any further relief to which they are entitled.

## COUNT II – NEGLIGENT NONCOMPLIANCE WITH THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §1681 *ET SEQ*.

**(On behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff)**

70.    Plaintiff incorporates by reference all preceding paragraphs.

71.    Plaintiff brings this count on behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff.

72.    Equifax is a consumer reporting agency as defined by the Fair Credit Reporting Act ("FCRA") at 15 U.S.C. §1681a(f), as Equifax regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

73.    Plaintiff is a consumer as defined at 15 U.S.C. §1681a(c).

74.    The Congressional intent behind FCRA was, in part, to require that consumer reporting agencies adopt reasonable procedures that keeps consumer information confidential and available for proper utilization only.  See 15 § U.S.C. §1681(b).

75.    A consumer report is defined by FCRA as

…any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or

collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for - **(A)** credit or insurance to be used primarily for personal, family, or household purposes; **(B)** employment purposes; or **(C)** any other purpose authorized under section 1681b of this title. (15 U.S.C. §1681a(d))

76.    Pursuant to FCRA, Equifax may only furnish a consumer report in response to expressly enumerated circumstances "and no other." See 15 U.S.C. §1681b(a).

77.    Pursuant to FCRA, Equifax was required to maintain reasonable procedures designed to avoid violations of the act, including §1681b. See 15 U.S.C. §1681e(a).

78.    FCRA further requires that the prospective users identify themselves and certify the purposes for which the information is sought and certify that the information will be used for no other purpose. See 15 U.S.C. §1681e(a).

79.    FCRA further requires that every consumer reporting agency:

> shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user with a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable ground for believing that the consumer report will not be used for a purposes listed in section 1681b of this title. See 15 U.S.C. §1681e(a).

80.    Equifax negligently violated FCRA by furnishing Plaintiff's and the Class members' consumer reports to unidentified persons through Equifax's website.

81.    The information improperly accessed by hackers from Equifax's website falls under the FCRA definition of consumer reports as the data included any information bearing on a consumer's credit history, credit standing, credit worthiness, credit capacity, character, reputation and income for purposes of determining credit eligibility for Class members.

82.    Equifax negligently violated FCRA by not keeping Plaintiff's and the Class members' information confidential and by not ensuring that the disclosure of such information was for proper utilization only.

83.    Rather, the information disclosed is highly likely to be used for improper uses such as identity theft, fraudulent credit usage, false credit applications, false tax return filing, and for other criminal, nefarious, and other improper activities.

84.    Equifax negligently violated FCRA by disclosing Plaintiff's and the Class members' information without obtaining the identity of the person(s) receiving the information, without obtaining certification that the uses of the information were permitted under FCRA.

85.    Equifax negligently violated FCRA by not making a reasonable effort to verify the identity of the persons accessing Plaintiff and the Class members' data and by not making a reasonable effort to verify the uses of that data.

86.    Equifax acted negligently in disregard of its obligations under FCRA.

87.     Equifax's failures are especially egregious if reports are accurate that Equifax was aware of a known security lapse in its software and failed to install the patch to fix it.

88.     Plaintiff and the Class members have been damaged by negligent noncompliance of the FCRA and are entitled to recover any actual damages sustained by the consumer as a result of the failure and the costs of the action together with attorneys' fees, pursuant to  15 U.S.C. §1681o(a).

WHEREFORE, Plaintiff and the Class members respectfully request entry of a Judgment against Defendant Equifax, Inc. in whatever damages amount Plaintiff and the Class members are found to be entitled, plus interest, costs, and reasonable attorneys' fees.   Plaintiff further requests that this Court enter a Judgment declaring Equifax's acts as negligent noncompliance with the Fair Credit Reporting Act. Plaintiff and the Class members request a Judgment for appropriate injunctive relief prohibiting further violations and proscribing behavior in order to remedy the violations and to comply with the Fair Credit Reporting Act in the future.  Plaintiff and the Class members request any further relief to which they are entitled.

## COUNT III – VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT AND OTHER STATES' CONSUMER PROTECTION STATUTES

### (On behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff)

89.    Plaintiff incorporates by reference all preceding paragraphs.

90.    Plaintiff brings this count on behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff.

91.    The Michigan Consumer Protection Act (Mich. Comp. Laws §445.901, *et seq.*) ("MCPA"), holds unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."

92.    At all times relevant hereto, Equifax was conducting trade or commerce as defined under the MCL §445.902(1)(g).

93.    At all relevant times hereto, Equifax was a "person" engaged in "trade or commerce" within the meaning of the MCL §445.902(1)(d).

94.    Plaintiff and the Class Members are persons under the MCPA. *Id.*

95.    Equifax violated the Michigan Consumer Protection Act, MCL § 445.901, *et. seq.* by, *inter alia*:

a.    Equifax held itself out to consumers as, among other things, a data collection agency and trusted steward of PII;

b.    Equifax represented that the PII in its possession was accurate and secure;

25

c.      Equifax failed to reveal facts about its security measures that were material to the transactions;

d.      Equifax failed to reveal known vulnerabilities is its data security systems; and

e.      Equifax failed to fully inform Plaintiff and Class Members of a data breach that occurred earlier in the year at TALX, one of its subsidiaries.

96.     Plaintiff and Class Members had no way of knowing what security measures Equifax had in place prior to the breach.

97.     Equifax "fail[ed] to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer" as prohibited under M.C.L. §445.903(1)(s).

98.     A reasonable consumer would want to know, before entrusting personally identifiable information to the care of another entity, that such entity is unwilling or unable to ensure the security and protection of the personal and financial information.

99.     Plaintiff and Class Members would not have allowed Equifax to maintain access to their PII had they know that its internal controls were inadequate and susceptible to the eventual breach.

100. As a result of Equifax's violation of the MCPA, Plaintiff and the Class Members have incurred damages in amounts to be established at trial.

WHEREFORE, Plaintiff and the Class members respectfully request entry of a Judgment against Defendant Equifax, Inc. in whatever damages amount Plaintiff and the Class members are found to be entitled. Plaintiff and Class Members seek compensatory damages, attorneys' fees, and any other just and proper relief available under Mich. Comp. Laws § 445.911.

## COUNT IV- VIOLATION OF MICHIGAN IDENTITY THEFT PROTECTION ACT, MCL § 445.72(1), *ET SEQ.*

### (On behalf of the Michigan Subclass and Plaintiff)

101. Plaintiff incorporates by reference all preceding paragraphs.

102. Plaintiff brings this claim on behalf of the Michigan Subclass and Plaintiff.

103. Pursuant to Mich. Comp. Laws. Ann. ("MCL") § 445.72(1)(a), Equifax was and is required to:

> provide notice of a security breach to each resident of the state who meets one or more of the following:
> (a) That resident's unencrypted and unredacted personal information was accessed and acquired by an unauthorized person.
> (b) That resident's personal information was accessed and acquired in encrypted form by a person with unauthorized access to the encryption key. (MCL § 445.72(1)(a))

104. Further, Equifax was and is required to provide such notice without unreasonable delay pursuant to MCL § 445.72(4).

105.   Equifax is bound by these requirements as a corporation, as defined in MCL 445.63(p) and because Equifax  is a business that owns, licenses, and/or maintains a computerized database which includes personal and financial information, defined above in MCL § 445.72(1)(a).

106. Plaintiff and the Michigan Subclass' personal and financial information entrusted to Equifax and defined above, includes personal information as set forth in  MCL §445.72(1).

107.   Equifax had a duty to immediately notify Plaintiff and the Michigan Subclass of the unauthorized security breach without unreasonable delay pursuant to MCL § 445.72(4).

108.   Equifax failed to notify Plaintiff and the Michigan Subclass of the security breach without unreasonable delay, as set forth more fully above.

109.   As a direct and proximate result of Equifax's violations of MCL §445.72(4), Plaintiff and the Michigan Subclass members suffered damages, as described above.

WHEREFORE, Plaintiff and the Michigan Subclass members respectfully request entry of a Judgment against Defendant Equifax, Inc. in whatever damages amount Plaintiff and the Class members are found to be entitled.  Plaintiff and Class Members seek all available relief provided by MCL 445.72(13), including,

but not limited to a civil fine, compensatory damages, and any other just and proper relief available under MCL§§ 445.72(13)-(15).

## COUNT V – NEGLIGENCE

### (On behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff)

110.   Plaintiff incorporates by reference all preceding paragraphs.

111.   Plaintiff brings this count on behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff.

112.   Equifax's business involves acquiring and storing the personally identifiable personal and financial information of individuals, including that of Plaintiff and Class Members.

113.   In accepting the task of managing and storing this PII,  Equifax assumed several duties with respect to of Plaintiffs and Class Members, including but not limited to:

    a.   the duty to exercise reasonable care to keep the PII secure and to ensure that only authorized personnel had access to the information;

    b.   the duty to exercise reasonable care in selecting, implementing, and maintaining adequate internal controls and security

measures consistent with recommended industry standards and guidelines;

c.      the duty to exercise reasonable care in monitoring internal controls and security systems for vulnerabilities;

d.      the duty to exercise reasonable care in updating security systems and implementing available "fixes" in a timely manner; and

e.      the duty to exercise reasonable care in informing Plaintiff and Class Members of security breaches and/or unauthorized access of PII in a timely, complete and accurate manner.

114.   Equifax breached its duties to Plaintiff and Class members in several ways, including but not limited to:

a.      failing to exercise reasonable care to keep the PII secure and to ensure that only authorized personnel had access to the information;

b.      failing to exercise reasonable care in selecting, implementing, and maintaining adequate internal controls and security measures consistent with recommended industry standards and guidelines;

c.      failing to exercise reasonable care in monitoring internal controls and security systems for vulnerabilities;

d.      failing to exercise reasonable care in updating security systems and implementing available "fixes" in a timely manner; and

e.      failing to exercise reasonable care in informing Plaintiff and Class Members of security breaches and/or unauthorized access of PII in a timely, complete, and accurate manner.

115.   Equifax's negligence in failing to select, implement, maintain, and monitor adequate and proper internal controls and security measures, coupled with its negligence in failing to implement corrective procedures in a timely, accurate, and complete manner, directly and proximately caused injury to Plaintiff and the Class Members.

116.   As a direct and proximate result of Equifax allowing unauthorized persons to gain access to their PII, Plaintiff and Class Members have and will continue to suffer injury in fact, including monetary damages, and will continue to do so as a result of Equifax's negligence in an amount to be determined at trial.

117.   As a direct and proximate result of Equifax's actions, Plaintiff's and the Class Members' personal and financial information subject to the breach may be used in a variety of improper and illegal purposes, including but not limited to, the sale on the black market. Plaintiff and the Class will also incur substantial

damages monitoring their accounts and credit, obtaining credit reports, notifying credit bureaus, loss of privacy, detrimental impact on credit scores, unauthorized charges on credit and debit accounts, inability to access accounts frozen after improper access, identity theft, and the loss of valuable time in dealing with any illegal use of their personal and financial information exposed by the breach. These damages are compounded by Equifax's inexplicable delay in notifying Plaintiff and the Class of the breach.

WHEREFORE,  Plaintiff and the Class members respectfully request entry of a Judgment against Defendant Equifax, Inc. in whatever damages amount Plaintiff and the Class members are found to be entitled.  Plaintiff and Class members seek equitable relief in the form of an accounting as to how their PII was accessed by unauthorized persons, as well as damages, in an amount to be decided by the jury.

### COUNT VI- NEGLIGENCE *PER SE*

**(On behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff)**

118.   Plaintiff incorporates by reference all preceding paragraphs.

119.   Plaintiff brings this count on behalf of Plaintiff and the Nationwide Class, or alternatively, the Michigan Subclass and Plaintiff.

120.   Pursuant to Section 5 of the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45(a)(1)), the MCPA and the other State's consumer protection

laws, Defendant had a duty to keep and protect the PII of Plaintiff and all Class Members and to use reasonable measures consistent with industry standards to ensure the PII was protected.

121.   Defendants violated Section 5 of the FTC Act, the MCPA, and the other State's consumer protection laws by failing to safeguard and protect the PII of Plaintiff and the Class Members and by failing to use reasonable measures consistent with industry standards to ensure the PII was protected.

122.   Defendant further violated Section 5 of the FTC, the MCPA, and the other State's consumer protection laws by failing to timely repair and patch Defendant's electronic system when advised of the flaws and vulnerabilities of the system,

123.   Defendant's violations of Section 5 of the FTC Act, the MCPA, and the other State's consumer protection laws constitutes negligence *per se*.

124.   As a direct and proximate result of Equifax allowing unauthorized persons to gain access to their PII, Plaintiff and Class Members have and will continue to suffer injury in fact, including monetary damages, and will continue to do so as a result of Defendants' negligence *per se* in an amount to be determined at trial.

125.   As a direct and proximate result of Defendants' negligence *per se*, Plaintiff's and the Class Members' personal and financial information subject to

the breach may be used in a variety of improper and illegal purposes, including but not limited to, the sale on the black market. Plaintiff and the Class will also incur substantial damages monitoring their accounts and credit, obtaining credit reports, notifying credit bureaus, loss of privacy, detrimental impact on credit scores, unauthorized charges on credit and debit accounts, inability to access accounts frozen after improper access, identity theft, and the loss of valuable time in dealing with any illegal use of their personal and financial information exposed by the breach.   These damages are compounded by Defendant's inexplicable delay in notifying Plaintiff and the Class of the breach.

WHEREFORE,  Plaintiff and the Class members respectfully request entry of a Judgment against Defendant Equifax, Inc. in whatever damages amount Plaintiff and the Class members are found to be entitled.   Plaintiff and Class members seek equitable relief in the form of an accounting as to how their PII was accessed by unauthorized persons, as well as damages, in an amount to be decided by the jury.

## **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1.  For an order certifying this action as a class action;

2.  For an order appointing Plaintiff as representative of the Class and his counsel of record as Class counsel;

3.  For an award of actual, general, special, incidental, statutory, compensatory, and consequential damages and in an amount to be proven at trial;

4.  For an award of exemplary and punitive damages in an amount to be proven at trial;

6.  For costs;

7.  For interest;

9.  For attorneys' fees;

10. For such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff and the Class respectfully demand trial by jury on all issues so triable.


Dated:  December 12, 2017                     Respectfully submitted,

                                              **THE MILLER LAW FIRM, P.C.**


                                              By: */s/ E. Powell Miller*
                                                    E. Powell Miller (P39487)
                                                    Sharon S. Almonrode (P33938)
                                                    950 W. University Dr., Ste. 300
                                                    Rochester, MI 48307
                                                    (248) 841-2200
                                                    *Attorneys for Plaintiff*